UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF WEST VIRGINIA

FILED

DEC - 1 2008

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

adam nicholas: casey,                      )
            Petitioner,                     )
                                            )
                                            )
v.                                          )          5:08-1373
                                            )
Mr. Orman, "Warden of FCI-Beckley",         )
Bonita Bowman, "Supervisor of Law Library", )
Mr. Bowdway, "Lt. of SIS",                  )
Mr. Koch, "Counselor of Popular-B Upper",   )
Ms. Jack, "Case Manager of Popular-B Upper",)
Mr. Harding, "acting Case Manager",         )
Mr. Gershew, "Superior Officer",            )
Mr. Foster, "acting SHU-1, Officer",        )
Mr. Howaker, "Officer acting SHU-1",        )

MOTION FOR EQUITABLE EMERGENCY
INJUNCTION PURSUANT TO 42 U.S.C.A. § 1983;
WRIT OF "HEBEAS CORPUS" PURSUANT TO
U.S.C.A. § 2241; and CRIMINAL COMPLAINT(S)
PURSUANT TO TITLE 18 U.S.C.A. § 242.

COMES NOW, Petitioner, via special appearance "De Bene Esse", ~~proper~~ propria persona, "Not Generally", and a federal prisoner to Motion this Honorable Court for an "Emergency Equitable Injunction" pursuant to 42 U.S.C.A. § 1983; A "Writ of Hebeas Corpus" pursuant to ___ U.S.C.A. § 2241; and "Criminal Complaint(s)" pursuant to 18 U.S.C.A. § 242. Due to numerous "Supreme Court Law" _Bounds_, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), violations/Constitutional violations, and Criminal Acts of deprivation of rights, priviledges, and immunities by federal officers. This statement is supported by the foregoing ~~facts~~ stated facts.

## LIBERAL PLEADINGS AND CONSTRUANCE DOCTRINE

As a propria persona ("pro se") pleader, Petitioner invokes the full benefits and protections of the liberal pleadings and construance doctrine as established in _Haines v Kerner_, 404 U.S. 519 (1972); _Boag v. MacDougall_, 454 U.S. 364 (1982) (pro se pleadings are to be liberally construed and treated; pro se pleaders are not to be held to the same standards as attorneys; leave to amend shall be freely and liberally given to a pro se pleader); _Hill v United States_, 368 U.S. 424 (1987) (pro se pleadings are not subject to dismissal on mere technicallity; pro se pleadings must be construed liberally under

whatever law, rule, or practice is appropriate and which would provide pleader with the proper avenue for relief; courts are not bound by couching of a pro se prisoners pleadings, and must construe them to the best benefit of the pro se pleader).

# JURISDICTION

This Court has proper jurisdiction, in that the Location of the here-in-stated violations, that are ongoing, are at the Federal Correctional Institution-Beckley, Industrial Road, Beaver, West Virginia state 25813, and is located within this Courts Jurisdiction. Also, this Court has Jurisdiction pursuant to 42 U.S.C.A. § 1983, "Writ of Hebeas Corpus" ____ U.S.C.A. § 2241, and "Supreme Court Law", Bounds, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed. 2d. 72 (1977), as well as, Title 18 U.S.C.A. § 242.

# STATEMENT OF THE CASE

Petitioner on September 22, 2008, presented Mr. Harding, acting "Case Manager", (hereinafter "Harding") with an "Inmate Request to STAFF", Ref: Exhibit "A-1", to request for CCC/Half-way house time which would be sufficient due to Petitioner's financial situation, stated in depth in Exhibit "A-1". In which, Harding ~~made or a hit ey~~ ~~recommendation, took Buck to take at the Body~~

waited two (2) weeks latter to give the Petitioner a response of denial of the requested seven (7) months, and Harding made a arbitrary ~~cross~~ recommendation of one-hundred and twenty to one-hundred and fifty (120 to 150) days at the Half-way house. When Petitioner questioned Harding's recommendation; Harding stated "because you [Petitioner] have family support, education, job skills, and, job history". (Ref: Ehibit "A-1") And Harding held up Petitioner's account invoice for the last six (6) months that included performance pay for Petitioner's teaching job at education department.

Petitioner then argued that he had in fact calculated all Hardings reasoning for denial into the equation, (ie family support, education, job skills, and job history.) because the seven (7) months at the Half-way house would produce enough funds to pay for first months rent, security deposit for the apartment, and security deposit for electric and water. And, family support would provide shoes, cloths, tools (if needed), dishes, bed, dresser, etc, etc... And, Petitioner's education, job skills, and job history would give a "good" "chance", not a positive fact in the country's current economic crisis and struggle, for Petitioner to secure a twelve dollar ($12.00) an hour job. (Note: Petitioner has no belongings, none what so ever, due to his daughters Mother had possession of all Petitioner's

belongings at time when he was incarcerated, and she is no longer
on good terms with Petitioner, due to Petitioner stopping his
daughter's Mother from amputating his daughter's foot and
getting a Court Order for her to get second opinion, as well
as Petitioner seeking remedy for Constitutional violations
of Due Process visited upon Petitioner by Virginia state,
"Warren County" Juvenile and Domestic Relations court officers.)

Harding refused and was adament with his arbitrary
decision even after Petitioner argued the above noted state-
ment, as well as, after Petitioner provided copy of con-
trolling law 18 U.S.CA. § 3624 (c)(1),(6)(A)(B)(C) that states
a prisoner can get upto twelve (12) months in the Half-way house
and that the determination for sufficient stay is to be
determined on an individual basis and the Bureau of Prisons
Director, who Harding is acting as agent for, is to provide
a sufficient duration to provide the greatest likelihood
of a successful reintegration back into the community.
Thus, Petitioner showed where and why obligation was owed by
Harding and that Petitioner had a right to seven (7) months
pursuant to 18 USCA. § 3624 (c)(1),(6)(A)(B)(C) to enable Petitioner's
greatest likelihood for a successful reintegration back into
the community. (Note: Petitioner's projected release date is
July 1, 2009, so the seven (7) months would be December 1, 2009.)

On October 17, 2008, Petitioner sent a "Private Admini-

strative Remedy"(hereinafter "Remedy")(i.e./a.ka. - Friendly Suit/
Presentment/Contract/Compact/ Security Agreement/Agreed State-
ment of Facts/Ex Parte Dispositions/Notice/Affidavit.) to Harding
regarding the arbitrary decision of denying Petitioner's
request, and right thereto, for seven months in the Half-way
house, created by law, pursuant to and in harmony with
the following Uniform Commercial Code (s) (hereinafter "UCC"):
UCC §§ 1-103; 1-104; 1-105 (1) (i.e. all codes are derived from
"Business Law, Uniform Commercial Code, Third Edition, By: Len Young
& Gale Roberson, West Publishing Co. (19__)".); 1-106 (1); 1-201 (8),
(3)(2)(11)(19)(21)(16), (25)(a)(b), (26),(27),(29), (34),(37),(38),(42)(44)(b)(d); 1-202;
1-203; 1-205 et. seq.; 1-206; 1-207; 1-208; 2-208 (1); 2-205; 2-206-
(1)(a); and 9-105 (1)(b)(h). And as for "Ex Parte Disposition" see Walsh v.
Fogg Rogers, (US) 13 How 283, 14 L.Ed. 147. (Note: Due to the fact
Petitioner was denied all of his law work the afore- afore-
mentioned UCC codes might not be in order. Also, Petitioner
is unable to refererence case law for Friendly Suit, but can
be obtained from "Barron's Law Dictionary", "Lawyers Edition", by:
Steven H. Giffis). This "Remedy" was accompanied by a
Notice/Remedy to secure a security agreement if retaliation
is visited upon Petitioner.

Document, noted above as "Remedy" was received October
20, 2008, by E. Lily, FCI-Beckley mail staff (Ref: Exhibit 'B")
(Note: Petitioner does not have a copy of the "Remedy",
because Petitioner sent it home due to the sensitive information

on it, and due to the influence of FCI-Beckley has over Petitioner and his possessions, as well as, FCI-Beckley staff's reputation for retaliation. But, SIS staff at Beckley has a copy, and Petitioner can have a copy sent in to this Court from home. Also, the United States District Attorney for the Southern District of West Virginia should have a copy, which is latter explained herein.)

Petitioner was then escorted to the "Special Housing Unit" ("SHU") on October 27, 2008, at approximately 4:30 P.M. and placed under Administrative Detention under the discretion of SIS Officer Clark (Ref: Exhibit "C-1") for investigation of violation of Bureau of Prisons regulation 298 - "Interferring with a staff member in the performance of duties (Conduct must be of the High Severity nature.) This charge is to be used only when another charge of high severity is not applicable." (Ref: Exhibit "C-2"). This was done a full seven (7) days after Harding received the "Remedy".

On November 4, 2008, SIS Officer Kirkland came to speak with Petitioner just to ask if Petitioner had in fact been the one who sent the "Remedy" to Harding, at which Petitioner replied "yes" and pointed out his finger print was on the remedy provided as "L.S. seal". Officer Kirkland then stated that he was going to turn the "Remedy"

into the U.S. District Attorney for the Southern District of West Virginia and try and charge Petitioner with "Extortion" and "Mail Fraud", at which Petitioner stated that he just created a security agreement for the security interest due to Harding's obligation that was created by law. (Note: Petitioner has yet to receive any new Detention Order stating any change in the investigation which states Petitioner is being investigated for a criminal charge/act, which is a violation of the Administrative Procedures Act.)

On numerous occassions Petitioner has presented personally, or put in, an "Inmate Request to staff" regarding addresses for the Clerk of Court for the United States District Court for the Southern Dististrict of West Virginia, as well as, the P.O. Box for Mary E. Stanley, "Magistrate Judge", for the same Court noted above. Also, the address for the Associated Press out of New York, and for the following Law Books: American Jurisprudence 2nd Edition (AmJur2d) on "Extortion", Execution, Penal and Correctional Institutions, Mail Fraud," and other case law that Petitioner has neither received a resp response or access therto.

Petitioner presented personally personally, or put into the inmate mail system, the requests stated above at the times and dates specified below that was captured and recorded

on the security camera in the Special Housing Unit on A-range:

On October 28, 2008, at approximately 11:00 p.m. Petitioner put in a request to the "Supervisor of the Law Library", Ms. Bowman, for the AmJur2d on "Penal and Correctional Institutions";

On October 28, 2008, at approximately 11:00 p.m. Petitioner put in a request to Officer Foster, acting SHU-1, for the AmJur2d on Penal and Correctional Institutions";

On October 31, 2008, at approximately 4:00 p.m. Petitioner put in a request to Mr. Honaker, acting SHU-1, for the Clerk of Court for the United States District Court for the Southern District of West Virginia, the P.O. Box for Mary E. Stanley, "Magistrate Judge", for the same court noted above, and the address for the Associated Press in New York (hereinafter "Addresses for Courts, etc..");

On November 1, 2008, at approximately 11:00 a.m. Petitioner put in personally presented a request to Mr. Carter, acting SHU-1, for the addresses for Courts, etc.., at which Mr. Carter gave the request to Mr. Koch, who held it up in front of Petitioner's door in camera view;

On November 2, 2008, at approximately 7:30 pm. Petitioner put in a request to Ms. Jack, "Case Manager", for Addresses for Courts, etc.;

On November 3, 2008, at approximately 7:00 pm Petitioner put in a request to Officer Gershen, "Superior Officer", for addresses for Courts, etc.;

On November 5, 2008, at approximately 9:45 A.M. Petitioner personally presented to Ms. Bowman, "Supervisor of Law Library", two (2) requests, that were addressed to her supervisor Mr. Farley, when Petitioner presented them to Mr. Farley, he baconed Ms. Bowman to Petitioner's cell, so Petitioner gave them to Ms. Bowman. The requests were for Law Books and foot the addresses for Courts, etc.; and,

On November 12, 2008, at approximately 10:00 AM Petitioner personally presented Mr. Orman, "Warden", request for the addresses for Courts, etc., and Law Books.

(Note: Petitioner was in cell "A-13" from 10-27-08 to 11-7-08 then moved accross the hall to "A-12" and untill today 11-18-08)

Also, Petitioner has given two (2) "Remedy-Informal Resolutions"

that stated in depth the method, as well as the
controlling laws, of the operation of law(s) that the
"Remedy" that was presented to Harding were pursuant
to, it, the Remedy - Informal Resolution", also presented
an "Opportunity to Cure", On;

On November 1, 2008, at approximately 11:00 A.M. Petitioner
personally presented Mr. Koch, "Counselor", an "Remedy-
Informal Resolution and Opportunity to Cure", on
behalf of all Officers involved; and,

On November 3, 2008, at approximately 7:00 p.m. Petitioner
put in a "Private Administrative Remedy - Informal
Resolution and Opportunity to Cure" to Lt. Bowdway.

Note: Both Officers noted above, as well as the other
noted Officers have not responded, offered remedy or gave
the request Law Books or Addresses to Petitioner. To verify the
statements noted above Petitioner asks this Court to
Order for the vidio to be secured and sent to this
Court for evidence of the Criminal Acts, under 18
U.S.CA. §242, needed to prove the above noted Officers
diliberate inditternt actions to Petitions Constitutional
Rights and Libeties.

# ISSUES OF THE CASE

## Issue 1:

Petitioner is being denied his fundamental Constitutional rights of unrestricted access to the Courts, and Due Process by: Mr. Orman, "Warden of FCI-Beckley"; Bownita Bowman, "Supervisor of the Law Library"; Mr. Koch, "Counselor"; Ms. Jack, "Case Manager"; Mr. Honaker, acting "SHU-1"; Mr. Foster, acting "SHU-1"; and Mr. Gershen, "Superior Officer", in that all have shown a deliberate indifferance to their duty and obligation to Petitioner's rights and Liberties

## Conclusion of Issue 1:

Thus, the above noted federal Officers are in violation of United States Supreme Court Law, Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), as well as the Constitution of the United States.

## Relief Sought for Issue 1:

That this Honorable Court set an "Emergency Injunction" for the deprivation stated above and Order all Officers at FCI-Beckley that if a prisoner ~~asks~~ in the Special Housing Unit asks for Court addresses or Law Books they are to receive them within a reasonable

time of three (3) days, or at least to give reason why
the prisoner will have to wait, and the reason be in
writing so as to promote accountability, and/or liability,
of the Officer. Also, Petitioner would like to make a
<u>Criminal Complaint</u> on each of the above noted Officers
under Title 18 U.S.C.A. § 242 to be held accountable
for their actions, and to ensure that such actions of
diliberate indifference and nonfeasance are not visited
to any other prisoner to deprive one of any rights,
privledges or liberties.

<u>Issue 2:</u>

Petitioner is being denied his right to receive
an adequate duration of time in the half-way house by
Mr. Harding's, d.ba./D.B.A. "Case Manager", arbitrary decision,
capricious action, and wonton negligence, in that such
decision will create great hardship on Petitioner, due
to the fact that the request made by Petitioner for seven(7)
months duration was adequate, not overreaching, and
within the means of 18 U.S.C.A. § 3624 (c)(1),(6)(A)(B)(C)

<u>Conclusion of Issue 2:</u>

Such action of deprivation of Petitioner's
right to receive the seven(7) months in the halfway-house

is a Criminal ~~Cat~~ Act under 18 U.S.C.A. § 242.

Relief Sought for Issue 2:

That Mr. Harding be held ~~accountabili~~ accountability accountable for his actions under 18 U.S.C.A. § 242 for depriving Petitioner of his right to receive an adequate amount of time to ensure the greatest likelihood for a successful reintegration back into the Community

For an ~~Emergency~~ "Emergency Injunction" ordering the Warden of FCI-Beckley to give as much half-way house to Petitioner as he is able.

Issue 3:

Petitioner is being unlawfully detained for retaliatory purposes in the Special Housing Unit by Mr. Clark, Mr. Bowdway, Mr. Kirkland, and other unknown officers for exercising his right to remedy a wrong by means of Commercial/Contract Law for the Commercial relationship that clearly exists between Petitioner and Mr. Harding who is d.b.a./D.B.A. "Case Manager".

Conclusion to Issue 3:

14

The retaliation is apparent, due to the allegation, and detainment therefore, of the 298 investigation by SIS Officers of "Interfering with staff...", when Petitioner is clearly exercising his right to remedy a wrong by _whatever law is applicable_, because there is "_no law_" that states, or restricts, Petitioner, is only allowed to exercise certain law to remedy wrongs visited upon him, but, in fact, Petitioner, as well as anyone, can use the law in all its different characters and methods to remedy the wrongs visited upon him, and create a remedy therefore.

Further, Petitioner was in fact showing "good faith" by clearly clearifying, as well as brining it to his, Mr. Harding's, attention that he owed an obligation and had a right to fulfill to Petitioner, before the time had expired and the damage was done, thus, causing liability, as well as a Criminal Act, on Mr. Harding's behalf.

## Relief Sought for Issue 3:

For this Court to Issue an "Emergency Injunction" Ordering for a cease and decist of the clearly bogus investigation; for Petitioner to be put back into general population with no further retaliation to be visited upon him.

# OTHER ISSUES

There are still other Issues of violations going on at FCI-Beckley. One is there is no oporable type writter in the Special Housing Unit, the only one is an old 1950's Manual that does not work. Two, there is a major lack of time to use the law library in the Special Housing Unit. Petitioner has been in the Special Housing Unit for three weeks and has only been allowed approximately two and a-half (2½) hours of access to the Special Housing Units law Library.

## Relief Requested for Other Issues:

Have the Warden supply a useable type writter; there is a room directly below the law library that has but a few nats in it that could be turned into a room for typing to promote more time for use of law library, when prisoners requests books from main law library, plus more time for ~~typ~~ typing when a prisoner is in need.

# CLOSING

Petitioner would like to thank this honorable court for spending its very important time on these important matter, as Petititioner is under the influence of deprivation of rights, and liberties that have been

16.

established by the United States Constitution and Laws
of the United States.

Thank You for Your prompt attention to this
matter.

Respectfully Presented on: 11/18/2008 A.D.

ucc1-207 "Without Prejudice"

adam nicholas: casey
adam nicholas; casey
[Reg No.: 11762-084]
c/o "General Delivery Only"
[FCI-Beckley]
Post Office Box 350
Beaver, West Virginia state
[25813]

17

I, adam nicholas:casey, sent the original to:

Clerk of Court
Sheryl L. Loesch
Geoge C. Young U.S. Courthouse
80 N. Hughey Ave., Room 300
Orlando, Florida state 32801-2278

To be redirected to:

Clerk of Court for the United States District Court
for the Southern District of West Virginia.

Due to Petitioner having no access to address and
being denied right by FCI-Staff.

I, adam nicholas:casey, attest and affirm the afore-
mentioned is true, correct and complete, ~~unded~~ under the penalty
of perjury, via de bene esse; and thereby set my hand:

ucc 1-207 "without Prejudice"

Executed On: 11/18/2008 A.D.            adam ~~nicholas:casey~~

                                        adam nicholas:casey

18

Exhibits Cover Page / Index

Exhibit       - Discription

"A-1"    - Inmate request to staff for Half-way House of seven (7) months due to Petitioners financial situation. 1 page

A-2      - A copy of Title 18 U.S.C. § 3624. 1 page.

"B"      - Proof of Service of "Private Administrative Remedy" to Mr. Harding "Case Manager" regarding, and establishing agreement of, obligation created by Title 18 § 3624. 2 pages

"C-1"    - Administrative Detention Order for Petitioner seeking remedy and security agreement and showing good faith to Mr. Harding by Petitioner giving Mr. Harding the chance to cure before security agreement attaches. 1 page.

"C-2"    - The Administrative Detention Order was based on, and activated on, "An Investigation, conducted by SIS for a 298 charge of "Interferring with staff member in the performance of duties.....""" at which Petitioner has supplied a page (52) that identifies this 298 charge. 1 page.

"D-1"    - page 32 out of the inmate handbook w/ it which states that "An Inmate Law Library Clerk is Available for assisting assistance in legal research." 1 page

"D-2"    - page 45 out of the inmate hand-book which state" 6. You have the right to unrestricted and confidential access to the courts by correspondence......" 1 page

1 of 1.

*A-1*

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) ~~~~~ "Case Manager" Mr. Harding | DATE: ~~~~~ 9-~~22~~-08 |
|---|---|
| FROM: Adam Nicholas Casey | REGISTER NO.: 11762-084 |
| WORK ASSIGNMENT: Electric Shop | UNIT: BFU |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.) Hello. I am an inmate that had been sentenced to 48 months. I have lost no good-time
credit during my sentence and, as of now, have a projected release date of July 1, 2009. I have,
as of now, Ten months and a few days left on my sentence. I have completed 12 ACE/TRC/TRS courses,
two VT courses, 1 Life Skills class and have obtained my GED. On my own, I have been fighting for
almost a year, for my daughter, Destiny Starr Casey, who is 2½ years old, to receive the best and
correct surgery for her condition of Lymphedemia. I have contacted a foundation which is going
to do the best job possible and try to save her foot. The former doctors at UVA just wanted to
amputate her foot, ~~as well as her mother did also who is now showing medical neglect~~. Also, to
the same court that ordered my daughter's mother to take her to the foundation is now refusing
to enforce their order, so I am respectfully asking for the
consideration to receive, at the most, 8 months CCC, or at the least 6 months, due to the following
reasons: -- Due to the fact that I have some skill, I might get a job making $12.00 an hour in
which ~~($12.00 x 40 hours = $480.00, Subsistance Charge at CCC is  25% of Gross income, plus minus~~
another 25% for FICA, State Tax, Social Security, etc.. is 25%, also monthly living expenses is
at the very least $50.00, in which there is only $190.00 left to save, and I have a child. -- The
average 2 bedroom apartment is $600.00 per month, I need two bedrooms because I hope to gain custody
of my daughter soon, and $600.00 security deposit, as well as a $150.00 security deposit on water
and ~~electricity, which could be more now, leaves me in need of a total of $1,350.00~~. -- In which
with a $12.00 an hour job I will need approximately 7 months to save $1,330.00 in order for me
to gain a place, and this does not include furniture.

                         (Do not write below this line)          *adam nicholas casey*

DISPOSITION:

*You have family support, education, job skills, job history.
Recommend 120-150 days.*

| Signature Staff Member *[signature]* | Date 10-8-08 |
|---|---|

Record Copy - File; Copy / Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Printed on Recycled Paper

A 2

Corporate and Business Law:
5 Antitrust Laws and Trade Regulation, 2nd Edition (Matthew Bender), ch 92, Full-Scale Investigations by the Department of Justice § 92.02.
5 Antitrust Counseling and Litigation Techniques (Matthew Bender), ch 52, Introduction to Criminal Antitrust Litigation § 52.01.

§ 3624.  Release of a prisoner

(a) Date of release. A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday.

(b) Credit toward service of sentence for satisfactory behavior. (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year [,] other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determined that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. In awarding credit under this section, the Bureau shall consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree. Credit that has not been earned may not later be granted. Subject to paragraph (2), credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

(2) Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody.

(3) The Attorney General shall ensure that the Bureau of Prisons has in effect an optional General Educational Development program for inmates who have not earned a high school diploma or its equivalent.

(4) Exemptions to the General Educational Development requirement may be made as deemed appropriate by the Director of the Federal Bureau of Prisons.

(c) Prerelease custody. (1) In general. The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(2) Home confinement authority. The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

(3) Assistance. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.

(4) No limitations. Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621 [18 USCS § 3621].

(5) Reporting. Not later than 1 year after the date of the enactment of the Second Chance Act of 2007 [enacted April 9, 2008] (and every year thereafter), the Director of the Bureau of Prisons shall transmit to the Committee on the Judiciary of the Senate and the Committee on the Judiciary of the House of Representatives a report describing the Bureau's utilization of community corrections facilities. Each report under this paragraph shall set forth the number and percentage of Federal prisoners placed in community corrections facilities during the preceding year, the average length of such placements, trends in such

utilization, the reasons some prisoners are not placed in community corrections facilities, and any other information that may be useful to the committees in determining if the Bureau is utilizing community corrections facilities in an effective manner.

(6) Issuance of regulations. The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007 [enacted April 9, 2008], which shall ensure that placement in a community correctional facility by the Bureau of Prisons is—
(A) conducted in a manner consistent with section 3621(b) of this title [18 USCS § 3621(b)];
(B) determined on an individual basis; and
(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

(d) Allotment of clothing, funds, and transportation. Upon the release of a prisoner on the expiration of the prisoner's term of imprisonment, the Bureau of Prisons shall furnish the prisoner with—
(1) suitable clothing;
(2) an amount of money, not more than $500, determined by the Director to be consistent with the needs of the offender and the public interest, unless the Director determines that the financial position of the offender is such that no sum should be furnished; and
(3) transportation to the place of the prisoner's conviction, to the prisoner's bona fide residence within the United States, or to such other place within the United States as may be authorized by the Director.

(e) Supervision after release. A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days. Upon the release of a prisoner by the Bureau of Prisons to supervised release, the Bureau of Prisons shall notify such prisoner, verbally and in writing, of the requirement that the prisoner adhere to an installment schedule, not to exceed 2 years except in special circumstances, to pay for any fine imposed for the offense committed by such prisoner, and of the consequences of failure to pay such fines under sections 3611 through 3614 of this title [18 USCS §§ 3611 through 3614].

(f) Mandatory functional literacy requirement. (1) The Attorney General shall direct the Bureau of Prisons to have in effect a mandatory functional literacy program for all mentally capable inmates who are not functionally literate in each Federal correctional institution within 6 months from the date of the enactment of this Act.

(2) Each mandatory functional literacy program shall include a requirement that each inmate participate in such program for a mandatory period sufficient to provide the inmate with an adequate opportunity to achieve functional literacy, and appropriate incentives which lead to successful completion of such programs shall be developed and implemented.

(3) As used in this section, the term "functional literacy" means—
(A) an eighth grade equivalence in reading and mathematics on a nationally recognized standardized test;
(B) functional competency or literacy on a nationally recognized criterion-referenced test; or
(C) a combination of subparagraphs (A) and (B).

(4) Non-English speaking inmates shall be required to participate in an English-As-A-Second-Language program until they function at the equivalence of the eighth grade on a nationally recognized educational achievement test.

(5) The Chief Executive Officer of each institution shall have authority to grant waivers for good cause as determined and documented on an individual basis.

Added Oct. 12, 1984, P.L. 98-473, Title II, Ch II, § 212(a)(2), 98 Stat. 2008; Nov. 10, 1986,



**U.S. Postal Service.**
**CERTIFIED MAIL.. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

adam Nicholas Casey [RBU]

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Postmark Here

Sent To
M. Harding, Case Manager FCI-Beckley

Street, Apt. No.; or PO Box No.  Post Office Box 1280

City, State, ZIP+4  Beaver, West Virginia state [25813]

PS Form 3800, August 2006                    See Reverse for Instructions

7006  2150  0004  5675  4626



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

M. Harding, Case Manager
Post Office Box 1280
Beaver, West Virginia state

[25813]

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☑ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
10-20-08

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7006 2150 0004 5675 4626

PS Form 3811, August 2001      Domestic Return Receipt      102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

CHARLESTON WV 253

21 OCT 2008 PM 3

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Jean Caesy
119 Summit Point Drive
Front Royal, Virginia state      [22630]

U.S. Department of Justice
Federal Bureau of Prisons

# Administrative Detention Order

_____ FCI BECKLEY
Institution

TO:   SPECIAL HOUSING UNIT OFFICER                      DATE:   10/27/2008

                                                        TIME:   4:39 PM
FROM:   CLARK                        (Name/Title)

SUBJECT:   Placement of  CASEY, ADAM, Reg. No.: 11762-084, in Administrative Detention.

- [ ] (A)  Is Pending a hearing of a violation of Bureau regulations;

- [X] (B)  Is Pending investigation of a violation of Bureau regulations;

- [ ] (C)  Is Pending investigation or tial for a criminal act;

- [ ] (D)  Is to be admitted to Administrative Detention

    - [ ] (1)  Since the inmate has requested admission for protection;

      I hearby request placement in Administrative Detention for my own protection.

      Inmate Signature/Register No.:  _____

      Staff Witness Printed Name/Signature:  _____

    - [ ] (2)  Since a serious threat exists to individual's safety as preceived by staff, although
      person has not requested admission; referral of the necessary information will be forwarded
      to the UDC/DHO for appropraite hearing.

- [ ] (E)  Is pending transfer or is in holdover status during transfer;

- [ ] (F)  Is pending classification; or to complete Disciplinary Segregation time sanctioned by DHO

- [ ] (G)  Is terminating confinement in Disciplinary Segregation and has been ordered into
  Administrative Detention by the Warden's designee.

It is this officer's decision based upon all the circumstances that the above named inmate's continued
presence in the general population poses a serious threat to life, property, self, staff, other inmates, or
to the security or orderly running of the institution because *

SIS INVESTIGATION CODE 298

Therefore, the above named inmate is to be placed in Administrative Detention until further notice.
The inmate received a copy of this Order on    (Date/Time):  _____ 10/27/2008  4:42 PM

Staff Witness Signature/Printed Name:  _____ FORD   Date:  10/27/2008

*In the case of DHO action, reference to that order is sufficient.  In other cases, the officer will make an independant review and decision, which is documented here.

CC:   Inmate Concerned (not necessary if placement is a result of holdover status)
      Captain
      Unit Manager
      Operations Supervisor-Administrative Detention Unit
      Central File

[TABLE 3 (Cont'd)
HIGH CATEGORY (Cont'd)

| CODE | PROHIBITED ACTS | SANCTIONS |
|---|---|---|
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff) | Sanctions A-M) |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission. | |
| 222 | Making, possessing, or using intoxicants | |
| 223 | Refusing to breathe into a breathalyzer or take part in other testing for use of alcohol | |
| 224 | Assaulting any person (charged with this act only when a serious physical injury or contact has been attempted or carried out by an inmate) | |
| 297 | Use of the telephone for abuses other than criminal activity (e.g., circumventing telephone monitoring procedures; possession and/or use of another inmate's PIN number; third-party calling; third-party billing; using credit card numbers to place telephone calls; conference calling; talking in code) | |
| 298 | Interfering with a staff member in the performance of duties. (Conduct must be of the High Severity nature.) This charge is to be used only when another charge of high severity is not applicable. | |
| 299 | Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons. (Conduct must be of the High Severity nature.) This charge is to be used only when another charge of high severity is not applicable. | |



Page 52

## Education Programs

Educational opportunities include literacy, English-as-a-Second Language, adult continuing education, occupational training programs, post-secondary education, parenting, and leisure-time activities. Program Statement 5350.28, Literacy Program (GED Standard), requires inmates who do not have a GED credential or a high school diploma to complete 240 instructional hours of literacy program participation. An inmate may request to withdraw from the literacy program after 240 instructional hours; however, withdrawal may affect good conduct time for inmates sentenced under the Violent Crime Control and Law Enforcement Act (VCCLEA) and the Prison Litigation Reform Act (PLRA). All promotions in the Federal Prison Industries and institution assignments beyond the entry level grade are contingent on successful completion of the Literacy Program (GED). Program Statement 5350.24, English-as-a-Second Language Program (ESL), requires inmates with limited English proficiency skills to attend ESL classes until they have achieved the eighth-grade level as measured by a score of 225 on the ESL CASAS Reading Certification test and a score of 215 on the Listening Comprehension test. Inmates with a score of 225 on the ESL CASAS Reading and deportation detainer are still subject to the satisfactory literacy provision of the VCCLEA and PLRA.

Adult continuing education courses are inmate-taught general knowledge classes which last approximately ten weeks. Commercial drivers license, legal research, and Spanish are examples of ACE classes which may be offered. Occupational training programs include blueprint, carpentry, computer applications, electric, masonry, plumbing, and appliance repair. The advanced occupational college classes are offered through New River Community and Technical College. Inmates may earn a one-year certificate in business. Inmates may also enroll in correspondence courses from other colleges at their own expense. The college coordinator must give approval, prior to enrollment. A 40-hour parenting program encourages inmates to maintain family relationships while incarcerated. Parenting topics include child development, child health, child safety, and abusive relationships. Library activities are available during leisure time.

## Training

Training in various occupational areas is offered at FCI Beckley. Traditional programs such as computer literacy, carpentry, major appliance repair, residential wiring, and masonry continue to be popular.

## Recreation, Leisure, and Social Programs

Leisure activities and recreation programs include indoor and outdoor activities, and range from individualized arts and crafts programs to intramural team sports such as softball, basketball, soccer, volleyball, and football. Physical fitness and weight reduction programs are also important activities for inmates and contribute to mental health, good interpersonal relations, and stress reduction. In addition, inmates can learn to use their free time constructively by participating in physical fitness classes and wellness classes.

Page 13

## Page 14

## Religious Services

Religious Services provides pastoral care, counseling, and a variety of religious programs to assist in one's spiritual formation. There are regularly scheduled services, studies, special programs, high holy days and periodic guest speakers who speak on a variety of faith issues.

The Religious Services staff invite each one to actively involve themselves in religious programs and spiritual formation.

## Counseling Activities

There are many alternatives for inmates who have personal problems and desire to correct them. These options include Self-Image groups and other voluntary groups conducted by Correctional Counselors. Inmate participation in these activities will be encouraged upon staff's assessment of inmate needs, but participation in such activities is voluntary. The staff of each unit is available for informal counseling sessions and formal group counseling activities.

## Psychology and Psychiatry Programs

Psychology Services is a department consisting of seven Psychologists, fourteen Treatment Specialists, and a Psychology Technician under the direction of the Chief Psychologist. Each unit has an assigned psychologist available to provide counseling and other mental health services. In some cases, the psychologist has an office in the unit, where he/she can be easily reached by the inmates, help develop ongoing counseling programs, or for personal consultation. Psychology Services offers a wide range of group educational programs including stress management, anger management and smoking cessation, as well as other such programs.

In addition to the above programs, a variety of services are available with respect to drug treatment. Drug Abuse Education, Non Residential Drug Abuse Treatment, Residential Drug Abuse (RDAP) treatment (500 hour program), and Transitional Services Treatment are all available at this institution. The Residential Drug Abuse Program is housed in Poplar A Lower.

Psychology Services provides services in two other significant areas. The BRAVE Program is a six-month residential self-improvement program for young offenders serving lengthy terms of incarceration. Inmates 32 years of age or younger with sentences of 60 months or more may volunteer for program participation through Psychology Services. The program is housed in Oak A Lower. Inmates are encouraged to enroll in available programs.

With respect to Psychiatric Services, a contract psychiatrist, who is a medical doctor, is available for regular consultation for those needing medications or medication monitoring. Access to these services occurs either by consulting Health Services or Psychology Services Staff.

## Musical Instruments

Musical instruments are available in the recreation area for inmates at most institutions. These instruments will remain in the recreation area.

## Page 51

**[TABLE 3 (Cont'd)**
**HIGH CATEGORY (Cont'd)**

| CODE | PROHIBITED ACTS | SANCTIONS |
|------|-----------------|-----------|
| 212 | Engaging in, or encouraging a group demonstration | G. Loss of privileges: commissary, movies, recreation, etc. |
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage | H. Change housing (quarters) |
| 214 | (Not to be used) | I. Remove from program and/or group activity |
| 215 | Introduction of alcohol into BOP facility | J. Loss of job |
| 216 | Giving or offering an official or staff member a bribe, or anything of value | K. Impound inmate's personal property |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes | L. - Confiscate contraband |
| 218 | Destroying, altering, or damaging government property, or the property of another person, having a value in excess of $100.00 or destroying, altering, damaging life-safety devices (e.g. fire alarm) regardless of financial value | M. Restrict to quarters] |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored.) | |

Instructions for Clerk of Court
for the U.S. District Court for
the Southern District of West Virginia.

① could you please make a copy of this Motion and
send it to me so I can have a ~~a~~ copy;

② Could you please make a copy of this Motion
and give it directly to Mary E. Stanley due to
the Emergency and ergency that Petitioner ~~or~~ is
under, as well ~~d~~ as the deprivation that is
being ~~visit~~ visited upon Petitioner. Also, assign
this case to Ms./Judge Stanley.

Thank You for your prompt attention to this
important matter.

~~adam nicholas : casey~~
adam nicholas : casey #11762-08·
c/o "General Delivery Only"
[FCI - Beckley]
Post Office Box 350
Beaver, West Virginia state
[25813]



US DISTRICT COURT
FOR THE SOuTHern DistRict of WesT ViRginia
PO BOX 5009
BeckleY, WV 25801

Adam Nicholas CASey
# 11762-084
C/o "General Delivery only"
FCI - Beckley
P O Box 350
Beaver, WV 25813